IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:12-CV-33-FL

| | |
|---|---|
| WENDY E. DICKERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER AND MEMORANDUM |
| ) | AND RECOMMENDATION |
| STANFORD M. WHITE, KIM M. ) | |
| O'CONNOR and JOHN L. RISOLDI, SR., ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on Plaintiff Wendy E. Dickerson's ("Plaintiff") application to proceed *in forma pauperis* under 28 U.S.C. § 1915(a). [DE-1]. A litigant may commence an action in federal court *in forma pauperis* if she files an affidavit, in good faith, stating that she is unable to pay the costs of the law suit. *See* 28 U.S.C. § 1915(a). Nothing in the record suggests that Plaintiff's affidavit is inaccurate or submitted in bad faith. Accordingly, it appears that Plaintiff satisfies the financial requirements for *in forma pauperis* status and the motion is ALLOWED. However, section 1915(e)(2)(B) provides that the court "shall dismiss" an action filed *in forma pauperis* "at any time if the court determines that the action or appeal is (i) frivolous or malicious; (ii) fails to state a clam on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." For the reasons set forth below, this court RECOMMENDS that the complaint be DISMISSED.

### I. PLAINTIFF'S COMPLAINT

On June 25, 2012, Plaintiff filed a proposed complaint against Defendants Stanford White ("White"), Kim O'Connor ("O'Connor") and John L. Risoldi, Sr. ("Risoldi"). Compl. at

1. [DE-1-1]. According to the complaint, White is the President, owner and the registered agent of Stan White Realty ("White Realty") and is a North Carolina State Senator.[1] *Id.* Defendant O'Connor is a magistrate judge from Chowan County, North Carolina, and Risoldi is the Chief Fire Marshal of the Kill Devil Hills, North Carolina Fire Department. *Id.* Plaintiff alleges "[j]urisdiction is proper in this court according to 42 U.S.C. [§] 1983 and [the] Fair Housing Act." *Id.*

On or about February 17, 2012, Plaintiff rented a house located at 232 Sothel Street in Kill Devil Hills, North Carolina from White Realty. *Id.* ¶¶ 1, 5, 23. Plaintiff signed a lease agreement with White Realty to rent the house for a year and Plaintiff paid five months of rent in advance. *Id.* ¶ 4. When Plaintiff moved into the house she informed White Realty of several problems regarding the condition of the house. *Id.* ¶¶ 1, 13. Plaintiff alleges that "White Realty initially thought that putting a disabled person in a dangerous, rat infested, unsanitary and health hazardous house would be ok." *Id.* ¶ 1.

According to Plaintiff, White Realty violated North Carolina landlord tenant law by renting Plaintiff a house which had several dangerous conditions. *Id.* ¶¶ 1, 10. In particular, Plaintiff alleges the doors leading to the exterior of the house did not have operable locks, there was a broken window in the kitchen and there was mold and water damage in the house, all of which constitute an "imminently dangerous condition" in violation of N.C. Gen. Stat. § 42-42(8). *Id.* ¶¶ 10, 12, 15. In further violation of North Carolina General Statutes, the air conditioner and heater malfunctioned, and Plaintiff was required to buy a portable heater for the house. *Id.* ¶ 13. In addition, the lack of crawlspace vents, inoperable dryer vents and holes around pipes allowed

---

[1] Plaintiff has not named White Realty as a defendant to this action.

2

rodents to enter the house. *Id.* ¶ 14. Plaintiff addressed these problems with White Realty, but White Realty failed to respond to Plaintiff's complaints. *Id.* ¶ 23. According to Plaintiff, however, White Realty trespassed on the property when it directed a repairman to enter Plaintiff's house. *Id.* ¶ 11. Plaintiff also asserts that an employee of White Realty committed "slander, defamation and libel" when the employee told the police that Plaintiff threatened to burn down the house and have her dog attack a White Realty representative at the house. *Id.* ¶ 18.

Plaintiff contacted Kill Devil Hills Chief Fire Marshal Risoldi advising him that White Realty had provided her a house with a dryer that would catch fire if used, and that she did not have a smoke detector or fire extinguisher. *Id.* ¶ 3. In response, Risoldi advised Plaintiff to "[g]o buy a smoke detector at Kmart; it will only cost you about $15." *Id.* According to Plaintiff, Risoldi is biased and conspired to interfere with Plaintiff's civil rights, in violation of N.C. Gen. Stat. § 99D-1 when Risoldi "dismissed" Plaintiff's "pleas for help" in advising Plaintiff to purchase a smoke detector. *Id.* ¶ 19. According to Plaintiff, the city code requires all residential units to have operational smoke detectors the type and location of which must be approved by the Fire Marshal. *Id.*

Plaintiff hired a license home inspector who made recommendations regarding the mold, water damage and washer and dryer. *Id.* ¶¶ 15, 17. Plaintiff emailed White Realty advising of the mold and that Plaintiff was beginning to exhibit an allergic reaction to the mold, including headaches, coughing, sneezing and sinus pressure. *Id.* ¶ 23. White Realty ignored Plaintiff's email and refused to acknowledge the recommendations of the home inspection. *Id.* ¶¶ 15, 23.

On February 23, 2012, Plaintiff moved out of the house and into a hotel because she was

getting sick. *Id.* ¶ 23. Plaintiff alleges also, however, that White Realty made Plaintiff leave the house because Plaintiff had the house inspected, requested repairs be made to the house and because Plaintiff had complained to the Kill Devil Hills Planning and Development Department about electrical issues that were not being addressed. *Id.* ¶ 1. Plaintiff also alleges that she had asked White Realty to return a portion of the rent she had paid in advance because she needed money, to which White Realty responded it would return Plaintiff's money if Plaintiff vacated the premises the following day. *Id.* ¶ 7. Plaintiff claims that considering her financial situation, she had no choice but to leave. *Id.* Finally, Plaintiff also alleges that White Realty evicted her for complaining about the living conditions in the house in violation of N.C. Gen. Stat. 42-37.1(a). *See id.* ¶¶ 1, 7.

Defendants' actions have caused Plaintiff "difficulty and hardship, financially and emotionally." *Id.* ¶ 4. After having moved out of the house, Plaintiff now lives at a campground, in accommodations which have sustained water damage, rodent infestation and which lack running water. *Id.* Plaintiff must now use the campground restrooms and showers, and she will be forced to vacate the campground in December when the campground turns off its water. *Id.* Plaintiff contacted White Realty about her current living conditions and was told that White Realty did not have any other houses available in her price range. *See Id.*

Plaintiff filed three small claims actions in North Carolina state court against White Realty, which were presided over by Magistrate O'Connor. *Id.* ¶ 2. According to Plaintiff, Magistrate O'Connor was biased in that he did not consider the evidence Plaintiff presented in the small claims proceeding. *Id.* ¶ 20. Magistrate O'Connor ruled that Plaintiff failed to prove her damages regarding the cost of her move from the house. *Id.* ¶ 22. Magistrate O'Connor's

4

ruling was "false" because Plaintiff provided sufficient evidence of her damages. *Id.* Magistrate O'Connor was also unethical in that he failed to place Plaintiff and White Realty under oath during the small claims court proceedings. *Id.* ¶ 2, 21.

Plaintiff seeks reimbursement for costs incurred since moving out of her house, moving expenses, court costs and compensation for lost property, pain and suffering, and future moving costs, all of which total $75,001. *Id.* ¶ 26.

## II. STANDARD OF REVIEW

Where a plaintiff has obtained leave to proceed *in forma pauperis*, the court must conduct a review of the plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2). Under this statute, a district court must dismiss all or any part of an action found to be frivolous or malicious, which fails to state a claim upon which relief can be granted, or which seeks money damages from a defendant immune from such recovery. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Michau v. Charleston County, S.C.*, 434 F.3d 725, 728 (4th Cir. 2006); *Cochran v. Morris,* 73 F.3d 1310, 1315–16 (4th Cir. 1996) (discussing *sua sponte* dismissal under predecessor statute 28 U.S.C. § 1915(d)). A case is frivolous if it lacks an arguable basis in either law or fact. *See Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *see McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) ( "Examples of frivolous claims include those whose factual allegations are 'so nutty,' 'delusional,' or 'wholly fanciful' as to be simply 'unbelievable.'"). In addition, in order to state a claim on which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level...." *Twombly,* 550

5

U.S. at 555. While a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions. *Id.* In the present case, Plaintiff is proceeding *pro se* and pleadings drafted by a *pro se* litigant are held to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). This court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. *See id.*; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Noble v. Barnett*, 24 F.3d 582, 587 n. 6 (4th Cir. 1994). However, the principles requiring generous construction of *pro se* complaints are not without limits; the district courts are not required "to conjure up questions never squarely presented to them". *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

Construing Plaintiff's claims liberally as claims of civil rights violations by government officials, Plaintiff's claims arise under 42 U.S.C. § 1983. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989) ("[T]he express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor") (citation omitted); *see West v. Atkins*, 487 U.S. 42, 49 (1988) ("[S]tate employment is generally sufficient to render the defendant a state actor") (citation omitted); *Monell v. Dep't of Soc. Srvcs. of New York*, 436 U.S. 658, 690 (1978). Section 1983 imposes liability on anyone who, under the color of state law, deprives a person "of any rights, privileges, or immunities secured by he Constitution and laws." 42 U.S.C. § 1983. However, section 1983 is not a "source of substantive rights, but a method for vindicating federal

rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Lambert v. Williams,* 223 F.3d 257, 260 (4th Cir. 2000) (citations omitted). Thus, to state a cause of action under § 1983, a plaintiff must allege facts indicating that she has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under the color of state law. *West,* 487 U.S. at 49-50.

To that end, Plaintiff purports to assert a cause of action under the Fair Housing Act. Compl. at 1. The Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988, (FHA) prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services of facilities with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2). Such discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* §3604(f)(3)(b). To state a claim for failure to provide reasonable accommodations, a plaintiff must plead facts showing that the requested accommodation is "(1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing." *Bryant Woods Inn, Inc. v. Howard County, Md.,* 124 F.3d 597, 603 (4th Cir.1997). A reasonable accommodation is one that is "both efficacious and proportional to the costs to implement it." *Matarese v. Archstone Pentagon City,* 761 F. Supp.2d 346, 364 (E.D. Va. 2011) (citing *Wis. Cmty. Servs., Inc. v. City of Milwaukee,* 465 F.3d 737, 749 (7th Cir.2006)). A necessary accommodation is one that is directly linked to the equal opportunity to be provided to the disabled person; "if the proposed accommodation provides no direct amelioration of a

disability's effect, it cannot be said to be 'necessary.'" *Bryant Woods Inn, Inc.*, 124 F.3d at 604 (citing *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir.1995)). Finally, "the FHA only requires that disabled persons have equal opportunities in housing. Therefore, 'not every practice that creates a general inconvenience or burden on the person with a handicap needs to be modified.'" *Costello v. Johnson*, No. 3:11-CV-198, 2011 WL 3820890, at *4 (E. D. Va. Aug. 29, 2011) (quoting *Matarese*, 761 F. Supp.2d at 364); *see also Croley v. Hunting Creek Club Condominium Assoc.*, No. 105CV1326CMHBRP, 2005 WL 5269272, at *2 (E.D.Va. Dec. 13, 2005).

For the purposes of this discussion, the Court presumes that Plaintiff has a "handicap" within the meaning of 42 U.S.C. § 3602(h)[2] and as such, the Fair Housing Act is applicable. However, none of the allegations purporting to support a cause of action under the FHA are asserted against Defendants White, Risoldi or O'Connor; rather, the allegations of wrongdoing regarding Plaintiff's living conditions are asserted only against White Realty. According to the complaint, Plaintiff signed a lease agreement to rent the house with White Realty and Plaintiff alleges it was White Realty who failed to respond to her regarding the conditions of her house. *See* Compl. ¶¶ 1, 4, 13-15, 17, 23. In fact, Plaintiff alleges that "White Realty initially thought that putting a disabled person in a dangerous, rat infested, unsanitary and health hazardous house would be ok." *Id.* ¶ 1. No allegations of wrongdoing as to Plaintiff's purported cause of action

---

[2] Plaintiff does not allege that she has a handicap pursuant to the Fair Housing Act, and Plaintiff's pleadings are unclear as to her disability or how such disability "substantially limits one or more of [his] major life activities," 28 U.S.C. § 3602(h)(1). Instead, Plaintiff states that her "Social Security Disability Administration proof of income was used in her application to qualify for renting the house" from White Realty. Compl. ¶ 5. Plaintiff alleges also that she experienced an allergic reaction to mold before moving out of the house. *Id.* ¶ 23.

8

under the FHA have been attributed to Defendants White, Risoldi or O'Connor.[3]

Plaintiff has alleged Risoldi as Chief Fire Marshall for the City of Kill Devil Hills conspired to violate her civil rights in violation of North Carolina General Statute § 99D-1, when Risoldi suggested that Plaintiff purchase a smoke detector for her house in apparent violation of the local fire prevention code. *See* Compl. ¶ 19. "In order to impose municipal liability under section 1983, the municipality's employee must (at a minimum) have committed a constitutional violation." *Hill v. Robeson County*, 733 F. Supp. 2d 676, 683 (E.D.N.C. 2010) (citing *Monell*, 436 U.S. at 694). Here, Plaintiff has failed to allege that Fire Chief Risoldi has deprived her of a right or privilege secured by the constitution or a federal law. Indeed, Plaintiff's claim for relief under N.C. Gen. Stat. § 99D-1 is untenable as Plaintiff has failed to allege that Risoldi was "motivated by race, religion, ethnicity, or gender," as required by the statute. N.C. Gen. Stat. § 99D-1(a)(1). *See Hill v. North Carolina Dep't of Corr.*, No. 5:98-CV-429-BO; 1999 WL 1939996, at *6 (E.D.N.C. Feb. 26, 1999). Moreover, Plaintiff is precluded from maintaining an action under § 99D-1 because she has failed to allege that two or more persons were involved in a conspiracy, based on the plain language of the statute. *See* N.C. Gen. Stat. § 99D-1(a)(1).

Although Plaintiff alleges she sued Defendant White in North Carolina Small Claims court regarding the conditions of her house, the complaint is vague as to the particular nature of her allegations in small claims court and the issues resolved in those state judicial proceedings. It is clear however that Plaintiff alleges that Magistrate O'Connor erred in those proceedings in ruling that Plaintiff failed to show sufficient evidence justifying damages she sustained when she

---

[3] Indeed, according to the complaint, it appears Plaintiff may have initially sued the wrong Defendant in her state court proceedings. *See* Compl. ¶¶ 2, 24.

9

vacated the house, damages which she seeks in this court. Compl.¶¶ 2, 20-22. To the extent Plaintiff seeks a review of the small claims proceedings from the North Carolina courts, such a review is not permitted as it would violate the *Rooker-Feldman* doctrine. *See Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) (only the United States Supreme Court may review final judgments of a state court in a judicial proceeding); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *see Fuller v. Evans*, No. 1:05-CV-13, 2005 WL 1743955, at *2 (M.D.N.C. Mar. 24, 2005) (holding the *Rooker-Feldman* doctrine prevents a federal district court from reviewing judgments of magistrates and judges of the state court judicial system).

Plaintiff's claims against Magistrate O'Connor are based on judicial rulings made in the small claims proceedings. Magistrate O'Connor, however, is immune from suit for actions stemming from the exercise of his judicial authority. *See e.g., Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984); *Dean v. Shirer*, 547 F.2d 227, 231 (4th Cir. 1976)(a judge may not be attacked for exercising judicial authority even if done improperly); *Green v. North Carolina*, No. 4:08-CV-135-H, 2010 WL 3743767, at *3 (E.D.N.C. Sept. 21, 2010) (claims against North Carolina Superior Court Judge and/or clerk of court within their capacities as judicial officers is barred by doctrine of judicial immunity).

## IV. CONCLUSION

For the reasons stated above, this court ALLOWS Plaintiff's application to proceed *in forma pauperis*. In addition, this court RECOMMENDS that the underlying complaint be DISMISSED for failing to state a claim for which relief may be granted.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections.

10

Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

SO ORDERED AND SUBMITTED, this the 31st day of July, 2012.

*[signature]*
Robert B. Jones, Jr.
United States Magistrate Judge

11

Case 2:12-cv-00033-FL   Document 4   Filed 07/31/12   Page 11 of 11